***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly denominated in this action.
2. The employee-employer relationship as defined by N.C. Gen. Stat. § 97-2 (2) existed between Joyce R. Hawkins and defendant-employer on 9 August 1999.
3. Time Mortgage Company, L.L.C., was insured by State Farm Fire Casualty Company on 9 August 1999.
4. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. All parties are properly before the Commission for hearing, and the Commission has jurisdiction of the parties and the subject matter.
6. Joyce R. Hawkins' average weekly wage was $350.00, yielding a compensation rate of $233.33.
7. Joyce R. Hawkins was involved in a motor vehicle accident while in the course and scope of her employment with defendant-employer on 9 August 1999.
8. Documents stipulated into evidence include the following:
Stipulated Exhibit #1 Plaintiff's medical records
 *************
Based upon all the competent evidence presented by the parties, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff's date of birth is 18 January 1965. She began working for Time Mortgage Company as a mortgage loan originator on or about 28 May 1998.
2. On 9 August 1999, plaintiff was driving to pick up a check from an attorney's office in connection with a loan closing. While stopped at an intersection waiting for the light to turn green, a Ford Expedition crashed into her from behind. The force of the collision was sufficient to break her seat in such a manner that plaintiff was laid out flat. A State Trooper witnessed the accident and called for an ambulance, which transported plaintiff to Pitt County Memorial Hospital.
3. At the hospital, plaintiff's primary concern was an injury to her neck. Plaintiff did not make reference to any back pain at this time. The emergency room physician assessed plaintiff with a cervical strain and ordered x-rays which ruled out a cervical fracture. Plaintiff was discharged with pain medication and instructed to follow up with her primary care physician within the next two to three days. Plaintiff remained on narcotics and other pain medication for several months after the accident.
4. Two days after the accident, plaintiff presented at Physicians East Urgent Care still complaining of neck pain. In addition to her cervical pain, plaintiff developed frequent migraine-like headaches soon after her discharge from the hospital. Plaintiff's low back began bothering her, but not to the extent of her neck pain and headaches. Plaintiff did not mention back pain during this office visit. Plaintiff was referred for a neurological consultation after she awoke with her right arm numb.
5. Plaintiff presented to Dr. J. Gregg Hardy, a neurologist, on 28 September 1999. Plaintiff was complaining of headaches, neck pain, and back pain. Plaintiff testified and the Full Commission finds that plaintiff was concerned about her neck pain and headaches and did not focus on her low back pain until those primary concerns began dissipating. Likewise, her medical providers initially focused on plaintiff's primary complaints.
6. Plaintiff last saw Dr. Hardy on 3 November 1999, at which time plaintiff was still having some trouble with concentration as a result of her post-concussion headaches. Dr. Hardy admitted that the assessment he performed on plaintiff would not have detected low back pain if she had been experiencing such pain at that time. Dr. Hardy scheduled plaintiff to follow up with his nurse practitioner the following month.
7. When plaintiff presented to Dr. Hardy's nurse practitioner, Karen Tucci-Herron on 3 December 1999, she informed Ms. Tucci-Herron that she had suffered low back pain the week prior to the visit and that "it was so severe that she was unable to walk." Ms. Tucci-Herron inquired whether plaintiff had done anything that could have caused this particular onset of back pain. Plaintiff responded that she had not done anything that could have exacerbated the pain from the previous week but that she did have some low back pain after the motor vehicle accident. Ms. Tucci-Herron acknowledged that the pain medication plaintiff was on for her cervical strain and headaches could have masked some of plaintiff's other pain. Ms. Tucci-Herron's impression was that plaintiff had low back pain, presumably secondary to muscle spasm, and she eventually referred plaintiff to physical therapy. Ms. Tucci-Herron arrived at her assessment without performing any diagnostic tests.
8. After physical therapy failed to provide plaintiff with sufficient relief, she saw Dr. Christopher Hasty at Orthopedics East on 25 April 2000. Plaintiff informed him that she primarily had head and neck pain and symptoms at the time of the accident and that she subsequently developed some chronic low back pain. Dr. Hasty diagnosed plaintiff with chronic spondylolisthesis with the benefit of a diagnostic test. Dr. Hasty subsequently referred plaintiff to his partner, Dr. James Harvell, who specializes in back surgery.
9. After Dr. Harvell's initial examination of plaintiff on 11 July 2000, he ordered additional diagnostic tests, including a myelogram and postmyelogram CT scans of the lumbar spine. Ultimately, Dr. Harvell performed a decompression laminectomy on plaintiff on 28 August 2000.
10. Dr. Harvell testified that he expected plaintiff to reach maximum medical improvement one year post-operatively (August 2001). Dr. Harvell kept plaintiff out of work from 28 August 2000 until 7 February 2001. Upon her release to return to work, Dr. Harvell gave plaintiff work restrictions of four hours per day to be gradually increased to eight hours per day over a six to eight-week period.
11. Dr. Harvell testified that plaintiff's automobile accident of 9 August 1999 provoked plaintiff's otherwise asymptomatic pre-existing spondylolisthesis. Dr. Harvell based his opinion on the history of plaintiff's physical condition, her history of medical treatment, clinical examination, her age, radiographic examination, and his experience dealing with patients with spondylolisthesis. Dr. Harvell also testified that the provocation of plaintiff's symptoms by the accident necessitated her treatment with him and her ultimate need for surgery, and that plaintiff's inability to earn wages between 28 August 2001 and 6 February 2001 was attributable to said accident.
12. Dr. Hardy testified that he agrees with Dr. Harvell in so far as the automobile accident of 9 August 1999 aggravated plaintiff's pre-existing spondylolisthesis, however, he expressed difficulty in being definitive in making a connection since the accident occurred in August 1999, plaintiff made no significant complaints of back pain in September, 1999, and it was not until December 1999 that plaintiff's back pain became a problem.
13. The Full Commission assigns greater weight to the opinions expressed by Dr. Harvell.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff's compensable injury by accident of 9 August 1999 aggravated her pre-existing spondylolisthesis, and is a proximate cause of plaintiff's resulting disability. N.C. Gen Stat. § 97-2.
2. As a result of her compensable injury on 9 August 1999, plaintiff is entitled to temporary total disability compensation at the rate of $233.33 per week, from 28 August 2000 through 6 February 2001. N.C. Gen Stat. § 97-29.
3. Defendants are entitled to a credit against plaintiff's indemnity compensation in the amount of any wages plaintiff received between 28 August 2000 and 6 February 2001. N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to payment of all medical expenses incurred by plaintiff as a result of her compensable injury on 9 August 1999, and the resulting aggravation of her pre-existing spondylolisthesis, including payment of the surgery performed by Dr. Harvell and the follow-up treatment designed to effect a cure or provide relief of plaintiff's symptoms. N.C. Gen Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For her temporary total disability, defendants shall pay temporary total disability compensation to plaintiff at the rate of $233.33 per week, from 28 August 2000 through 6 February 2001, less any amount of wages paid to plaintiff by defendants during this period. Said amount shall be paid to plaintiff in a lump sum, subject to an attorney fee approved below.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of her compensable injury on 9 August 1999 and the resulting aggravation of her pre-existing spondylolisthesis, when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: One fourth of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
5. A determination of plaintiff's permanent partial impairment, if any, is reserved for subsequent determination.
This the ___ day of April, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER